COURT OF APPEALS
DECISION
DATED AND FILED

October 1, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1110-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2018CF1736**

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-APPELLANT,

V.

MARC SCHIEL,

DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Dane County: JILL KAROFSKY, Judge. *Reversed.*

Before Fitzpatrick, P.J., Blanchard, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. The State appeals a circuit court order granting Marc Schiel's motion to suppress evidence of Schiel's intoxication on grounds

that it was derived from an unlawful seizure, unsupported by reasonable suspicion. This case arises from a police-citizen encounter that occurred when Schiel was sitting in his idling vehicle in a parking lot. The State argues that the circuit court erred in concluding that Schiel was seized when a police officer parked his squad car at least a car's length behind Schiel's vehicle and, without activating his squad car's emergency lights, approached the driver's side window to speak with Schiel. Because we agree with the State that the officer's actions did not constitute a seizure under controlling Wisconsin Supreme Court precedent, we reverse.

## BACKGROUND

¶2      Schiel's running car was in the parking lot owned by, and adjacent to, a business not open at that time of night when Officer Ryan Roettger pulled in, got out of his squad, and made contact with Schiel. Less than a minute into their conversation, Schiel admitted he had consumed alcohol. Because of his prior convictions, Schiel was prohibited from operating a motor vehicle with a blood alcohol concentration greater than .02 grams per 100 milliliters. Based on the results of his field sobriety testing and a preliminary breath test, Schiel was arrested and charged with operating a motor vehicle with a prohibited alcohol concentration, as a fourth offense.

¶3      Schiel filed a motion to suppress, asserting that Officer Roettger "lacked a reasonable, articulable basis to initiate contact with Schiel, and, further, to tell Schiel not to park there if that was Roettger's concern." The following facts are taken from the evidentiary hearing on Schiel's suppression motion, namely, from the testimony of Roettger, as well as squad and body camera videos, and the transcripts therefrom.

¶4     At 1:52 a.m. on a weekend, Schiel was parked in the lot of a building supply company. Officer Roettger was driving his squad car in the area and saw Schiel's running vehicle. Roettger knew from his experience that the company was closed that early in the morning. He could not think of a reason for someone to park there, so he pulled into the parking lot because Roettger had what he referred to as a "suspicious hunch."

¶5     Officer Roettger parked "roughly a car length, if not more," behind Schiel's car, and was not "blocking [Schiel's] car in any way." Roettger had his headlights on, but not his emergency lights. Roettger used his squad car's spotlight to "light up" Schiel's vehicle for safety purposes.

¶6     Officer Roettger exited his squad car and approached Schiel's driver's side window. Roettger was holding a flashlight. Schiel's window was open. Roettger greeted Schiel and noted that he had picked "[a] little bit of a weird spot to park." Roettger asked where Schiel was coming from, and Schiel said "I was just actually down at the Hody [Bar]." Less than one minute into the conversation, Schiel admitted that he had consumed "two Coors Lights" at the Hody, he arrived at the Hody at about midnight, and he left that bar a short time before his conversation with Roettger.

¶7     At least one minute after Schiel made those statements, another police officer arrived and parked his squad next to Officer Roettger, "a similar distance behind Mr. Schiel's vehicle." His squad car's headlights were on, too. The second officer exited his car, approached the passenger's side window of Schiel's car, and shined his flashlight inside while Roettger continued speaking with Schiel.

3

¶8    During Schiel's cross-examination of Officer Roettger at the evidentiary hearing, the circuit court interjected:  "Quite honestly, I don't know why this officer stopped [Schiel].  I mean, even according to the officer's own testimony, he didn't have enough to stop him ... the stop was illegal....  [I]t just was."  The court stated that "the only way it could possibly have been okay for him to stop him was if it was a community caretaker stop, and the officer said nothing about that.  He said he had a suspicious hunch, which is the exact reason you may not stop."

¶9    The State countered that it was "not positing that this was a seizure."  It explained that no seizure occurred "until after the defendant told the officer that he had been drinking" and that up until that point, "this was a consensual conversation between a police officer and a citizen" under *County of Grant v. Vogt*, 2014 WI 76, 356 Wis. 2d 343, 850 N.W.2d 253.  The State argued that under *Vogt*, "an officer is completely allowed to go up to ... a citizen and voluntarily ask for information."

¶10    The circuit court said it understood the State's position, "but in order for there to be suspicious activity, a police officer has to be able to articulate the reasonable grounds that the officer believes a crime was committed, … is currently being committed, or was about to be committed in the near future."  The court acknowledged that it was "truncating this hearing a little bit," and the examination of Roettger never resumed.  The circuit court then stated its belief that "we have a constitutional right to be in parking lots at 2:00 in the morning ... and not be stopped or ... seized ... by the police officers."

¶11    The circuit court again brought up the community caretaker exception, and the State reiterated its position that no stop or seizure had occurred:

"This was not coerced. This was not based on any authoritative pressure by the officer. The officer was not giving any commands. And for those reasons, the seizure did not occur."

¶12 The circuit court concluded that Officer Roettger had unlawfully seized Schiel:

> Mr. Schiel was pulled over. He had two police officers --
> one in one window, one in the other window. A reasonable
> person would not have thought that that conversation -- that
> they didn't have to say anything. A reasonable person -- it
> wouldn't be reasonable for someone to think that they
> could roll up their window and just drive away.

The court granted Schiel's suppression motion and later dismissed the case. The State appeals.

## DISCUSSION

¶13 On appeal, the State asserts that the circuit court erred by determining that Schiel was seized for Fourth Amendment purposes at the time he told Officer Roettger he was coming from Hody's Bar, where he had consumed alcohol. That is, the State frames the issue on appeal as whether Officer Roettger seized Schiel before Schiel admitted to drinking alcohol in the amounts and at the times already noted, and argues that, under the reasoning and facts in *Vogt*, the encounter at this point was not a seizure but a consensual encounter. We agree with the State's analysis and conclusion.

¶14 The Fourth Amendment to the United State Constitution, and WIS. CONST. art. I, § 11, protect citizens against unreasonable governmental seizures. These provisions "are not implicated until a government agent 'seizes' a person." *Vogt*, 356 Wis. 2d 343, ¶19. Not all police-citizen encounters constitute seizures.

5

*Id.* "A seizure occurs '[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.'" *Id.*, ¶20 (quoting *United States v. Mendenhall*, 446 U.S. 544, 552 (1980)). Examples of circumstances tending to show a seizure include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id.*, ¶¶23, 53 (quoting *Mendenhall*, 446 U.S. at 554). A person has been seized for Fourth Amendment purposes "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Id.*, ¶20 (quoting *Mendenhall*, 446 U.S. at 554).

¶15    In determining whether a seizure has occurred, we apply a two-part standard of review. *See id.*, ¶17. We will uphold the circuit court's factual findings unless they are clearly erroneous, but we independently review the application of those facts to constitutional principles. *Id.*

¶16    This case strongly resembles *Vogt*. In *Vogt*, at around 1:00 a.m., an officer saw Vogt's vehicle pull into a parking lot next to a closed park and boat landing. *Id.*, ¶4. The officer did not witness any traffic violations but thought that Vogt's conduct was suspicious. *Id.* Curious, the officer pulled into the lot and parked his marked squad car "behind Vogt's vehicle a little off to the driver's side." *Id.*, ¶6. Vogt's car was running with the headlights on. "The squad car's headlights were on, but its red and blue emergency lights were not." *Id.* The officer, in full uniform and carrying a pistol in his holster, walked up to the car, knocked on the driver's side window, and motioned for Vogt to roll the window down. *Id.*, ¶¶7, 43. Vogt complied, and the officer asked what he was doing. *Id.*, ¶8. When Vogt responded, the officer noticed the smell of intoxicants and that

6

Vogt's speech was slurred. Ultimately, Vogt was arrested and charged with OWI. *Id.*, ¶¶8-9.

¶17 Vogt moved to suppress, arguing that the location of the officer's squad car and the officer's actions in getting Vogt to roll down his window constituted a seizure unsupported by reasonable suspicion. *Id.*, ¶¶9, 40. The Wisconsin Supreme Court disagreed, holding that Vogt was not seized at the point the officer observed signs of intoxication. Facts central to the court's decision were that the officer's squad car was not completely impeding Vogt's ability to drive away, and the officer did not "command" Vogt to roll down his window. *Id.*, ¶¶41-43.[1] The court explained its task as "seeking to identify the line between an officer's reasonable attempt to have a consensual conversation and a more consequential attempt to detain an individual." *Id.*, ¶¶3, 54. While recognizing that the objective reasonable person test "is complicated by the tendency of people to defer to a symbol of authority no matter how it is manifested," the court concluded that "a person's consent is no less valid simply because an individual is particularly susceptible to social or ethical pressures." *Id.*, ¶31.

¶18 We agree with the State that, under the reasoning of *Vogt*, Schiel was not seized at the time he admitted to drinking alcohol. The totality of the circumstances facing Schiel were strikingly similar to, and no more intimidating than, those in *Vogt*. Similar to *Vogt*, with his headlights on and without activating his emergency lights, Officer Roettger pulled his squad car behind Schiel's

---

[1] The *Vogt* court also explicitly considered that none of the examples described in *United States v. Mendenhall*, 446 U.S. 544, 552 (1980), were present, and that Vogt could have driven out of the parking lot without being charged with obstruction under WIS. STAT. § 346.04 because that statute applies only to highways. *See County of Grant v. Vogt*, 2014 WI 76, ¶¶44-47, 356 Wis. 2d 343, 850 N.W.2d 253.

vehicle, which was already in a parking lot. As in *Vogt*, no weapons were drawn, Schiel's vehicle was not blocked in, and Roettger was the only officer present when Schiel admitted to drinking alcohol. While it is true that Roettger used his squad car's spotlight and carried a flashlight, this is not sufficiently intimidating to transform a consensual encounter into a seizure under the reasoning in *Vogt*. Additionally, whereas the officer in *Vogt* tapped on the window and motioned for Vogt to roll it down, Schiel's window was already open when Roettger made contact.

¶19    Next, Schiel argues that his suppression motion was sufficient to challenge the constitutionality of the entire encounter, and that it was the State's burden to identify the precise point at which the encounter became a seizure, and to prove that after that point, the seizure was justified by reasonable suspicion. According to Schiel, the State's failure to do so is fatal to its appeal. We are not persuaded.

¶20    WISCONSIN STAT. § 971.30(2)(c)[2] provides that all motions must "[s]tate with particularity the grounds for the motion and the order or relief sought." "Neither the principle of notice, nor … § 971.30 makes an exception for motions raising Fourth Amendment challenges." *State v. Caban*, 210 Wis. 2d 597, 606, 563 N.W.2d 501 (1997). In *Caban*, although the defendant asserted a "broad Fourth Amendment challenge" to the warrantless search of his vehicle, his failure to specifically challenge probable cause to search in his motion and at the suppression hearing meant that he forfeited his right to raise that issue on appeal.

---

[2] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

*Id.* at 604-09; *see also* ***State v. Radder***, 2018 WI App 36, ¶16, 382 Wis. 2d 749, 915 N.W.2d 180 ("The fact that the State would bear the burden of proof at a hearing does not mean [the defendant] simply gets to raise questions and put the State to its proof.… [T]he State is entitled to notice of the factual disputes supporting a purported constitutional violation.").

¶21 In the case at bar, Schiel was required to plead the nature of the challenged police conduct, including when it occurred. The only reasonable reading of Schiel's arguments in the circuit court is that he was challenging the conduct of law enforcement before Schiel informed Officer Roettger that he had consumed alcohol. Schiel's suppression motion alleged: "Officer Roettger had a hunch, nothing more, to support his seizure of Marc Schiel for the purpose of conducting an investigation. He observed no law violation. He observed no driving that suggested an impaired driver." The motion continued: "There was nothing objectively suspicious about a person sitting in a running vehicle in a parking lot at 1:50 a.m. Roettger lacked a reasonable, articulable basis to initiate contact with Schiel …."

¶22 Likewise, in his supporting circuit court brief, Schiel alleged: "The police officer lacked specific and articulable facts to believe that a crime or traffic violation was occurring, or had occurred, when he pulled up to Marc Schiel's lawfully parked vehicle and made contact with him." The brief also contended, "Nothing about the time or manner of parking, or the location of Schiel's vehicle created any reasonable suspicion of criminal activity or violation of traffic laws. It did not permit further investigation, nor did it even necessitate contact by the officer." The brief further alleged: "In the present case, though Roettger apparently did not initiate a formal traffic stop using his emergency lights, his contact with Schiel was, nonetheless, a seizure."

¶23   Schiel's repeated assertion that Officer Roettger seized him on nothing more than a "hunch" makes clear that he sought to challenge the police action preceding his admission to drinking alcohol.  If Schiel wanted to oppose the police action following his admission, he needed to specify that in his motion or at the suppression hearing so that the State had an opportunity to directly address that issue, and so that the circuit court could fully consider it.  *See Caban*, 210 Wis. 2d at 605-09.  The State had no obligation to address a legal theory that Schiel failed to advance in the circuit court.

¶24   Finally, Schiel urges us to assume that the circuit court made certain factual findings that might justify its conclusion that Schiel was unlawfully seized. These include the following:  that Officer Roettger accused Schiel of wrongdoing by stating, "A little bit of a weird spot to park"; that Roettger used a "loud, commanding tone" during the encounter; and that the presence of a second officer is relevant to whether the encounter was consensual when Schiel admitted drinking.  We decline the request.  The evidence of record does not support these findings, and we independently review whether the circuit court applied the correct legal standard to the facts.

*By the Court.*—Order reversed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.